# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **MONCLER S.p.A.,** | |
| *Plaintiff,* | |
| v. | Civil Action No. |
| **A191427606, *et al.,*** | |
| *Defendants.* | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER, ASSET FREEZE ORDER, AND ORDER TO SHOW CAUSE

## INTRODUCTION

Plaintiff manufacturer and distributes outwear, apparel, footwear, luggage and accessories under the well-known MONCLER trademark. Plaintiff has invested considerable time and money building up tremendous goodwill in its marks and related products. Plaintiff takes great care to protect its IP rights and spends considerable time and money enforcing them against counterfeiters. Despite these efforts, counterfeiters proliferate.

On information and belief, Defendants are Chinese companies or individuals that sell products bearing counterfeit copies of Plaintiffs' MONCLER Marks through e-commerce stores on online marketplaces such as Alibaba, AliExpress, DHGate, Wish and Amazon.com. Defendants are  advertising and selling unauthorized products bearing counterfeit copies of Plaintiff's Marks, as well as using Plaintiff's Marks to advertise and sell unauthorized versions of Plaintiff's products, thereby severely harming Plaintiff's valuable brand and associated goodwill. These counterfeit and/or infringing products typically do not meet relevant product safety and labeling standards, thereby irreparably harming Plaintiff's valuable brand and goodwill and presenting a safety hazard to unwary purchasers. Plaintiff seeks an *ex parte* temporary restraining order shutting down Defendants' e-commerce stores and freezing Defendants' financial accounts.

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

TABLE OF CONTENTS.....................................................2

TABLE OF AUTHORITIES ...............................................3

FACTS ..............................................................................1

   I.  PLAINTIFFS' PRODUCTS AND MARKS...................1

   II.  PLAINTIFF'S ONGOING BATTLE AGAINST COUNTERFEITERS. ......3

APPLICABLE LEGAL STANDARDS ................................5

ARGUMENT ....................................................................7

   I.  THE COURT HAS JURISDICTION OVER DEFENDANTS. ...................7

   II.  PLAINTIFF IS ENTITLED TO AN *EX PARTE* TRO. ..................9

      A. PLAINTIFF IS LIKELY TO SUCCEED ON ITS CLAIMS. ..................9

      B. PLAINTIFF IS LIKELY TO SUFFER IRREPARABLE HARM. .........10

      C. BALANCE OF HARDSHIPS FAVORS PLANTIFF ............................12

      D. AN INJUNCTION WILL SERVE THE PUBLIC INTEREST...............12

      E.  THE TRO SHOULD ISSUE WITHOUT NOTICE. ...............................12

   III. THE COURT MAY ISSUE A TRO WITHOUT A BOND. ........................14

   IV.  AN ASSET FREEZE ORDER IS WARRANTED.................................16

CONCLUSION ................................................................17

# TABLE OF AUTHORITIES

**Statutes**

15 U.S.C. § 1057(b) ...........................................................................................8

**Rules**

*BellSouth Telecom., Inc. v. MCIMetro Access Transmission Services, LLC*,

    425 F.3d 964 (11th Cir. 2005) ...............................................................14

FED. R. CIV. P. 65(b)(1).....................................................................................5

Fed.R.Civ.P. 4(k)(2)...........................................................................................7

Fed.R.Civ.P. 65(c)............................................................................................13

**Federal Courts of Appeal**

*AT&T Broadband v. Tech Communications, Inc.*, 381 F.3d 1309 (11th Cir.

    2004).................................................................................................5, 12

*Burger King Corp. v. Mason*, 855 F.2d 779 (11th Cir. 1988) ..................................17

*Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982 (11th Cir.

    1995).................................................................................................6, 16

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013)................8

*Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir.

    1992).................................................................................................6, 16

*Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223 (11th Cir. 2005) ...................5

*U.S. S.E.C. v. Carrillo*, 115 F.3d 1540 (11th Cir. 1997) ...........................................7

**Federal District Courts**

*Cathedra Art Metal Co. v. Divinity Boutique, LLC*, 2018 WL 2356181 (N.D. Ga. 2018) ...........................................................................................9

*Chanel, Inc. v. Chanel255.ORG, et al.*, 2012 WL 12845630 (S.D. Fl. 2012).....6, 13

*Crossfit, Inc. v. Quinnie*, 232 F.Supp.3d 1295 (N.D.Ga. 2017) .............................10

*Dell Inc. v. BelgiumDomains, LLC*, 2007 WL 6862341 (S.D. Fl. 2007) ............6, 13

*Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F.Supp. 248 (S.D. Fl. 1982)..............................................................................5, 12

*Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, Case No. 17-CV-2789, 2017 WL 8942387 (N.D. Ga. Sep. 27, 2017)..................................................................14

*Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, No. 17-2789, 2017 WL 8942387 (N.D. Ga. 2017) ....................................................................................10

*Noorani Trading Inc. v. Bijani*, No. 17-1344, 2017 WL 8292437 (N.D. Ga. May 4, 2017)........................................................................................................10

*See InternetShopsInc.com v. Six C Consulting, Inc.*, No. 1:09–cv–698–JEC, 2011 WL 1113445 (N.D. Ga. Mar. 24, 2011).........................................................9

*University Books and Videos, Inc. v. Metropolitan Dade County*, 33 F.Supp.2d 1364 (S.D. Fla. 1999)..........................................................................14

*Wheeless v. Gelzer*, 765 F.Supp. 741 (N.D.Ga. 1991) ...........................................16

## FACTS

### I.  PLAINTIFFS' PRODUCTS AND MARKS.

Moncler is an international Italian apparel brand founded in France in 1952. Named for a local Alpine village, Moncler began as a producer of tents and quilted sleeping bags before producing their signature quilted down jackets for local factory workers. The unique quality of their products was quickly noticed by famous French mountaineer Lionel Terray; soon afterwards, Moncler released the "Moncler pour Lionel Terray" collection, featuring jackets, gloves, overalls, and sleeping bags. These products were used to outfit several high-profile mountaineering expeditions, such as the 1954 Italian expedition to K2 (the world's second tallest mountain) and the 1955 French expedition to Mount Makalu (the world's fifth tallest mountain), lending Moncler international recognition. Moncler achieved further world-wide notoriety in 1964 as the official supplier of Lionel Terray's Alaska expedition, and in 1968 as the official supplier of the French downhill ski team.  (Declaration of Stella Padovani ¶ 5.)

During the 1970s and 1980s, Moncler transitioned from a brand centered on outdoor sportswear to a brand that uniquely combined high-quality performance with aesthetic originality, introducing its signature stitching and "lacquered" coloring-effect for its redesigned down jackets. In 2003, Moncler was purchased by Italian entrepreneur Remo Ruffini, who still serves as the company's chairman

1

and CEO. Under his leadership, the company has grown even more successful, launching several new fashion lines. In December 2013 Moncler was listed on the Italian Stock Exchange: it was the most successful IPO ever in the European Market. Today, Moncler is sold throughout the United States at more than 20 boutiques stores. (*Id*. ¶ 6.)

Moncler owns numerous federal trademark registrations for its MONCLER mark and design marks, including the following:

| Mark | U.S. Federal Reg. Nos. |
|---|---|
| MONCLER | 803943<br>5332131<br>3784896<br>4611915 |
| MONCLER GENIUS | 5929368 |
| | 975069 |
| | 3964502<br>4479319 |
| | 5864888 |
| | 3737147 |
| | 4615701<br>4980459 |

2

| | |
|---|---|
| | 5754061 |
| | 4995553<br>3746977 |
| | 5420500 |
| | 5887712 |
| | 5841665 |
| | 5859563 |

True and correct copies of the certificates of registration for these marks are attached as Exhibit A to the Complaint. (*Id.* ¶ 7.)

## II. PLAINTIFF'S ONGOING BATTLE AGAINST COUNTERFEITERS.

The popularity of Plaintiff's product line and brand has resulted in a proliferation of many knock-off products, including unauthorized outerwear, apparel, footwear, luggage and accessories bearing counterfeit copies of Plaintiff's Mark(s). (*Id.* ¶ 8.) These unauthorized products do not meet Plaintiff's quality standards, thus eroding the brand's valuable reputation and goodwill. If consumers

3

are dissatisfied with the quality of the counterfeit product they purchase, that displeasure will be attributed to Plaintiff and its brand. The availability of counterfeit products can also cost the company considerable lost sales and harm our relationships with our authorized distributors. Unauthorized use of the MONCLER Marks also devalues the brand and corrodes Plaintiff's exclusive rights in the Marks. (*Id*. ¶ 9.)

Plaintiff spends considerable time and resources fighting counterfeiters. Plaintiff regularly uses standard notice and takedown procedures to remove counterfeit and infringing goods from the Internet. Despite Plaintiff's efforts, counterfeit and infringing products continue to be readily available through major e-commerce marketplaces such as: Alibaba, AliExpress, DHGate, and Wish (each a "Marketplace" and collectively the "Marketplaces"). The Marketplace intellectual property rights ("IPR") notice and takedown mechanisms have not been fully effectual in Plaintiff's continuing fight against the marketing and sale of counterfeit products bearing one or more of the MONCLER Marks. (*Id*. ¶ 10.)

If a Marketplace bans a seller because of repeat IPR infringement complaints, the seller can easily establish a new identity, set up a new Store and resume selling counterfeit goods in little time. Most Marketplaces do not require sellers to provide complete or accurate physical contact information, and others allow the sellers to operate with complete anonymity. (Sladkus Dec. ¶ 14-17.) With such anonymity,

sellers can advertise and sell counterfeit goods without any risk of an adverse judgment. This allows these sellers to destroy any evidence of their unlawful conduct and quickly transfer funds in the event of a legal proceeding. To successfully shut these sellers down and afford an aggrieved party the opportunity to obtain some type of remedy under the prevailing U.S. trademark laws, it is exceedingly important that the targets remain unaware that they are the subject of anti-counterfeiting measures; otherwise, they will disappear without a trace. (*Id.* ¶ 18.)

Plaintiff can usually identify counterfeit versions of its products by visual inspection, including the type, labeling, packaging materials, and the price at which the products are sold. Working together with the law firm of The Sladkus Law Group, Plaintiff has confirmed that each Defendant is using at least one of Plaintiff's Marks or a colorable imitation thereof on or in connection with the sale of non-genuine products. None of the Defendants is, or has ever been, authorized to manufacture, market or distribute any of the Plaintiff's products or to use the Plaintiff's Marks. (Padovani Dec. ¶ 12.)

## APPLICABLE LEGAL STANDARDS

A court will issue a temporary restraining order where the requesting party demonstrates the following four factors: (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the

order is not granted; (3) that the threatened injury to the plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest. *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

Courts may issue a temporary restraining order without notice to the adverse party where the facts in an affidavit demonstrate the moving party will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition and the movant's attorney certifies in writing the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1). Where a defendant's identity is known and notice can be feasibly given, the court may still grant an *ex parte* seizure order if providing notice to the defendant would render fruitless the further prosecution of the action. *AT&T Broadband v. Tech Communications, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004). "The weight of authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F.Supp. 248, 249-50 (S.D. Fl. 1982). The justification for an *ex parte* seizure order is even more compelling where a significant amount of evidence pertaining to the counterfeiting activity is in electronic form, and therefore subject to quick, easy, and untraceable destruction by the Defendants.

6

*Dell Inc. v. BelgiumDomains, LLC*, 2007 WL 6862341 at *2 (S.D. Fl. 2007); *see also Chanel, Inc. v. Chanel255.ORG, et al.*, 2012 WL 12845630 at *5 (S.D. Fl. 2012).

Requests for equitable relief invoke the court's inherent equitable powers to order preliminary injunctive relief, including an asset freeze, in order to assure the availability of permanent relief. *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995)(affirming district court's asset freeze order where plaintiff sought permanent injunction and equitable remedy of defendants' profits from counterfeiting). Plaintiff's requests for permanent injunctive relief and disgorgement of the Defendants' profits are requests for relief in equity. *Id*. Such asset freezes are particularly appropriate against sellers of counterfeit goods who are likely to hide their ill-gotten profits if their assets are not seized. *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992)(affirming asset freeze order against seller of counterfeit goods).

## ARGUMENT

## I.  THE COURT HAS JURISDICTION OVER DEFENDANTS.

Each Defendant has advertised and offered its counterfeit and/or infringing goods for sale to prospective purchasers in the United States. Using a suitable pretext, Plaintiff's counsel set up accounts with the Marketplaces using Atlanta, Georgia as its location. Counsel searched for Plaintiff's branded products on the

various Marketplaces, identified sellers advertising counterfeit goods bearing Plaintiff's registered Marks or non-genuine goods advertised for sale under Plaintiff's Marks, and confirmed that each seller was willing and able to ship these counterfeit and/or infringing products to the U.S. Counsel also confirmed that each Defendant was prepared to accept payment in U.S. dollars through a U.S.-based financial institution such as PayPal, AliPay, wire transfer, Payoneer, Context Logic and Western Union. Each Defendant advertised their willingness and ability to sell these counterfeit and/or infringing goods to customers in this judicial district, thereby purposefully directing its commercial activities here. (Sladkus Dec. ¶ 7-8.)

This Court has jurisdiction over the Defendants pursuant to Fed.R.Civ.P. 4(k)(2), which provides jurisdiction over a foreign defendant that is not subject to the jurisdiction of any state's court of general jurisdiction where exercising jurisdiction is consistent with the United States Constitution and its laws. Each Defendant has offered counterfeit or infringing products for sale throughout the United States, including in Georgia. Each Defendant is willing to engage in commercial transactions with residents of the United States, ship infringing and counterfeit products to the United States, and receive payment in U.S. dollars using a U.S.-based financial institution. Therefore, it is reasonable for the Defendants to expect that they may be sued in the United States. *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542-47 (11th Cir. 1997)(holding court had personal jurisdiction over foreign

corporation where defendant placed ads for securities in two airlines' in-flight magazines, mailed offering materials directly to U.S. investors, and maintained U.S. bank accounts to receive payment from investors.); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355-58 (11th Cir. 2013)(affirming jurisdiction over non-resident who sold counterfeit products through fully-interactive website.)

## II. PLAINTIFF IS ENTITLED TO AN *EX PARTE* TRO.

There is no question that the Defendants are marketing and selling unauthorized products bearing counterfeit copies of Plaintiff's Marks or otherwise using Plaintiff's Marks in a manner that is likely to cause consumer confusion. Plaintiff is entitled to an immediate restraining order prohibiting Defendants from continuing to infringe on its valuable trademarks and to protect unwary consumers from potentially dangerous products.

### A. PLAINTIFF IS LIKELY TO SUCCEED ON ITS CLAIMS.

Plaintiff owns numerous federally registered trademarks, including several registrations for MONCLER. (Collectively, "Plaintiff's Marks"). True and correct copies of the certificates of registration are attached as Exhibit A to the Complaint. The certificates of registration are *prima facie* evidence of the validity of the registered mark and the registration of the mark, Plaintiff's ownership of the mark, and Plaintiff's exclusive right to use the registered mark in commerce on or in connection with the goods in the certificates. 15 U.S.C. § 1057(b).

To determine whether Defendants are infringing Plaintiff's Marks, the Court will consider the strength of Plaintiff's Marks, the similarity of the marks, and the similarity of the goods. Plaintiff's Marks are inherently distinctive and have been registered on the Principal Register for many years and, as a result, have achieved significant recognition among the relevant consuming public.

Plaintiff, together with the undersigned counsel, has reviewed all of the product listings for each Defendant and confirmed certain Defendants are using a counterfeit of one of Plaintiff's Marks on non-genuine reproduction of Plaintiff's goods, or in association with the marketing or sale of other goods in such a manner as to confuse customers into believing the goods are genuine.

### B. PLAINTIFF IS LIKELY TO SUFFER IRREPARABLE HARM.

Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. *Ferrellgas Partners, L.P*, 143 Fed.Appx. 180, 190 (11th Cir. 2005). Evidence that a defendant sells a line of infringing products intending to capitalize on the plaintiff's goodwill constitutes "overwhelming evidence" that the plaintiff is likely to suffer irreparable harm. *Cathedra Art Metal Co. v. Divinity Boutique, LLC*, 2018 WL 2356181 at * 2 (N.D. Ga. 2018); *See InternetShopsInc.com v. Six C Consulting, Inc.*, No. 1:09–cv–698–JEC, 2011 WL 1113445, at *6 (N.D. Ga. Mar. 24, 2011) (dilution of goodwill, loss of control of reputation, and loss of trade are sufficient to find irreparable injury). "The most

10

corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Crossfit, Inc. v. Quinnie*, 232 F.Supp.3d 1295, 1316 (N.D.Ga. 2017).

Plaintiff has spent considerable time, money and effort building its valuable brand. The proliferation of counterfeit and/or infringing copies of Plaintiff's products erodes the distinctiveness of Plaintiff's Marks and diminishes their value and associated goodwill. Because Plaintiff cannot control the quality of counterfeit products, the sale of inferior and counterfeit products by Defendants will have a materially adverse effect on Plaintiff's business reputation and the goodwill associated with Plaintiff's Marks. This is sufficient to establish a likelihood of irreparable harm. *Noorani Trading Inc. v. Bijani*, No. 17-1344, 2017 WL 8292437 at *9 (N.D. Ga. May 4, 2017). The widespread and unauthorized use of Plaintiff's Marks in the marketing, offer for sale and sale of counterfeit and/or infringing products threatens the extensive goodwill associated with Plaintiff's business and Plaintiff's Marks, and will continue to cannibalize the sale of Plaintiff's genuine products. There is a significant threat that Plaintiff will suffer irreparable harm without an injunction. *Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, No. 17-2789, 2017 WL 8942387 at *3 (N.D. Ga. 2017).

## C. BALANCE OF HARDSHIPS FAVORS PLANTIFF

If Defendants are permitted to continue to sell their inferior counterfeit products, Plaintiff's reputation and the value of the goodwill associated with its Marks will be irreparably damaged. Moreover, counterfeiters such as Defendants capitalize off of the goodwill that Plaintiff has built in its products and brand while selling inferior and sometimes dangerous counterfeit products to unsuspecting consumers. In contrast, enjoining Defendants from selling counterfeit products poses little to no risk of damaging the goodwill, if any, associated with the Defendants.

## D. AN INJUNCTION WILL SERVE THE PUBLIC INTEREST.

Plaintiff's products undergo rigorous quality control testing. In contrast, Defendants' products are not required to meet any federal or state safety requirements Moreover, counterfeit products do not include the required federal or state labels that allow customers to locate the manufacturer in the event of a problem. Finally, counterfeit products do not meet Plaintiff's quality control standards, eroding Plaintiff's valuable reputation and goodwill. Thus, the public interest weighs in favor of an injunction.

## E. THE TRO SHOULD ISSUE WITHOUT NOTICE.

The Marketplaces allow sellers of counterfeit products such as Defendants to operate anonymously. From the undersigned counsel's considerable experience

fighting counterfeiters, where a Marketplace does require sellers to provide physical contact information, this information is consistently inaccurate, and sellers routinely provide false, incomplete or misleading contact information. (Sladkus Dec. ¶ 14-16.)

Moreover, the Court may grant an *ex parte* seizure order if providing notice to the Defendants would render fruitless the further prosecution of the action. *AT&T Broadband v. Tech Communications, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004). This is particularly true when combatting counterfeiters. "The weight of authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F.Supp. 248, 249-50 (S.D. Fl. 1982)(citing numerous cases). The justification for an *ex parte* seizure order is even more compelling where a significant amount of evidence pertaining to the counterfeiting activity is in electronic form, and therefore subject to quick, easy, and untraceable destruction by the Defendants. *Dell Inc. v. BelgiumDomains, LLC*, 2007 WL 6862341 at *2 (S.D. Fl. 2007); *see also Chanel, Inc. v. Chanel255.ORG, et al.*, 2012 WL 12845630 at *5 (S.D. Fl. 2012).

Defendants sell their counterfeit products to customers in the United States exclusively online and accept payment only through on-line payment processors.

Defendants can easily remove all evidence of their counterfeit products from their online storefronts and transfer any ill-gotten funds into foreign bank accounts, where they are beyond this court's reach. *See F.T.C. v. Atlantex Assoc.*, 872 F.2d 966, 968 (11th Cir. 1989)(affirming *ex parte* TRO and asset freeze order against party accused of deceptive trade practices to preserve funds for possible restitution). Therefore, it is imperative that Defendants not have advanced notice of any TRO.

## III.    THE COURT MAY ISSUE A TRO WITHOUT A BOND.

Federal Rule of Civil Procedure 65(c) requires than an applicant for a TRO or preliminary injunction provide security against the potential effects of a wrongfully-issued injunction:

> No restraining order or preliminary injunction shall issue except upon the giving of security by applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoyed or restrained.

Fed.R.Civ.P. 65(c). However, it is well-established in this circuit that the amount of security required by the rule is a matter within the discretion of the trial court, and the court may elect to require no security at all. *BellSouth Telecom., Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 970 (11th Cir. 2005); *see also e.g. Georgia Coal. for People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1269 (N.D. Ga. 2018) (waiving bond requirement and citing *BellSouth*);

*AFC Enterprises, Inc. v. Rest. Grp. LLC*, 1:10-CV-1772-TWT, 2010 WL 4537812, at *5 (N.D. Ga. Nov. 3, 2010) (rejecting defendant's argument that preliminary injunction was improperly granted because no bond was required); *DJR Associates, LLC v. Hammonds*, 241 F. Supp. 3d 1208, 1234 (N.D. Ala. 2017) ("The Eleventh Circuit . . . has said at least twice (although once in an unpublished opinion) that whether to set a bond as a condition to the issuance of a preliminary injunction and in what amount are within the discretion of the trial court."). Courts have held that security is not required when the moving party has a high probability of succeeding on its claim. *University Books and Videos, Inc. v. Metropolitan Dade County*, 33 F.Supp.2d 1364, 1374 (S.D. Fla. 1999). Finally, the burden is on the defendant to request a bond and submit evidence regarding the appropriate amount. *Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, Case No. 17-CV-2789, 2017 WL 8942387 (N.D. Ga. Sep. 27, 2017) (ordering defendants to provide reasonable estimate of potential lost sales, with supporting documentation, within one week of order).

Plaintiff has demonstrated that it has a substantial likelihood of succeeding on the merits of its claims. Therefore, this Court may waive the requirement for Plaintiff to post security. Alternatively, Plaintiff requests that the Court order Defendants to appear and provide an estimate of their potential lost sales, with

supporting documentation, at the hearing on Plaintiff's Motion for an order to show cause why a preliminary injunction should not issue.

## IV.    AN ASSET FREEZE ORDER IS WARRANTED.

Plaintiff asks this Court to issue an order freezing Defendants' assets including those in escrow, stored or processed by payment processors and financial institutions. Orders freezing a defendants' assets are warranted to assure the availability of permanent relief. *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). Such asset freezes are particularly appropriate against sellers of counterfeit goods who are likely to hide their ill-gotten profits if their assets are not seized. *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

A court can issue an asset freeze when its equitable authority is invoked. Plaintiff seeks a permanent injunction, an accounting of Defendants' profits pursuant to the Lanham Act, and an award of its attorney's fees. Plaintiff has thereby invoked this Court's equitable authority. *Levi Strauss*, 51 F.3d at 987; *Wheeless v. Gelzer*, 765 F.Supp. 741, 743 (N.D.Ga. 1991)(holding that request for attorneys' fees and monetary awards that are restitutionary in nature are equitable.)

In Plaintiff's experience, sellers of counterfeit goods are not deterred by the threat of injunctions or post-judgment damages. If only enjoined by a court, they simply set up a new account under a new alias and continue selling their

16

counterfeit products. Additionally, sellers can quickly transfer funds to foreign accounts. This makes it easy to hide profits from the sale of counterfeit products, making it impossible for Plaintiff to have a meaningful opportunity to seek redress in the form of permanent equitable relief, including disgorgement of profits.

Freezing Defendants' assets will also serve as a deterrent against future acts of counterfeiting and piracy. An equitable accounting of profits under the Lanham Act furthers the congressional purpose by making infringement unprofitable and is justified because it deprives defendants of unjust enrichment and provides a deterrent to similar activities in the future. *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988). Freezing the Defendants' assets will further the purposes of trademark law by making the sales of counterfeit products unprofitable, depriving the Defendants of their unjust enrichment, and deterring future sales of counterfeit goods.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (a) grant the Temporary Restraining Order for a period of fourteen (14) days; (b) order the relevant financial institutions and Marketplace Platforms, upon receiving notice, to freeze Defendants' assets and disable Defendants' Storefronts until the Court rules on Plaintiff's Motion for Preliminary Injunction; and (c) order that Defendants appear before this court to show cause why a preliminary injunction

should not issue and provide an estimate of their lost sales with supporting

documentation of on the date set forth in the TRO. Plaintiff further requests that

the Court may advance the trial on the merits and consolidate it with the hearing on

Plaintiff's Motion for Preliminary Injunction pursuant to Federal Rule 65(a)(2).

## CERTIFICATE OF FONT & SIZE SELECTION

I certify that this paper was prepared with one of the font and point selections

approved by the court in LR 5.1B.

Respectfully submitted,

THE SLADKUS LAW GROUP

s/Mark L. Seigel, Esq.
Mark L. Seigel, Esq.
Ga. Bar No. 634617
Jeffrey B. Sladkus, Esq.
Ga. Bar No. 651220
Jason H. Cooper, Esq.
Ga. Bar No. 778884
1397 Carroll Drive
Atlanta, GA 30318
Telephone: (404) 252-0900
Facsimile: (404) 252-0970
E-mail: mark@sladlaw.com
E-mail: jeff@sladlaw.com
E-mail: jason@sladlaw.com

**Attorneys for Plaintiff**

4820-7200-3753, v. 2